**Affirmed and Opinion filed May 6, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00914-CV

---

## IN THE INTEREST OF A.D.

---

**On Appeal from the 317th District Court
Jefferson County, Texas
Trial Court Cause No. C-206,829-B**

---

## O P I N I O N

In five issues, Sommer Douga appeals two aspects of a conservatorship order concerning her minor daughter, A.D.: (1) appointment of the father, Cayne Douga, as conservator with the exclusive right to designate A.D.'s primary residence; and (2) the order that Sommer's possession be supervised. We affirm.[1]

---

[1] This case was transferred to our court from the Beaumont Court of Appeals; therefore, we must decide the case in accordance with its precedent if our decision would be otherwise inconsistent with its precedent. *See* Tex. R. App. P. 41.3.

# I. BACKGROUND

Sommer and Cayne were divorced in July 2010 in Jefferson County, Texas. In the divorce decree, the trial court (1) appointed the parents as joint managing conservators of A.D., who was less than two years old, (2) gave Sommer the exclusive right to designate A.D's primary residence, and (3) rendered a standard possession order for Cayne. After the divorce, Sommer and A.D. resided in Buna, Texas (Jasper County), and Cayne resided in Nederland, Texas (Jefferson County).

In December 2010, Sommer reported to authorities a suspicion that Cayne had sexually abused A.D. during his visitation. An investigation, concluding in February 2011, "ruled out" the allegation. During the investigation, Sommer withheld Cayne's visitation and was subsequently placed on probation for contempt. Sommer also retained a personal-injury attorney, who took Cayne's deposition, in which he denied the allegation. Sommer then persisted for more than a year in accusing Cayne of sexually abusing A.D. although authorities and professionals continued to determine the allegations were unfounded.

Meanwhile, in February 2011, Cayne filed a petition to modify the decree (named a "counter-petition" because Sommer had filed her own petition, which she later dismissed). Cayne requested the right to designate A.D.'s primary residence. Several months later, Cayne filed a supporting affidavit, alleging Sommer was endangering A.D. by perpetuating the false accusations. Sommer filed a motion to dismiss Cayne's petition, which the trial court denied.

Additionally, shortly after the first accusation was ruled out and while the petition for modification was pending, Cayne requested temporary orders for A.D.'s safety. The trial court denied the motion. However, in December 2011, the trial court granted Cayne's second motion for temporary orders, after the accusations persisted. The court appointed Cayne temporary sole managing

conservator with the right to designate A.D.'s primary residence and ordered that Sommer's visitation be supervised by Cayne at his residence. The temporary order remained in effect until trial of Cayne's petition to modify, except for a brief period in which the court lifted but then reinstated the restriction that Sommer's visitation be supervised. Further, throughout the course of events, the trial court ordered the parties to counseling or psychological examinations at various times.

A jury trial commenced in August 2012. The jury found that the divorce decree should be modified to appoint Cayne as conservator with the exclusive right to designate A.D.'s primary residence. At a post-trial proceeding, the trial court announced it would order that Sommer's possession continue to be supervised. The trial court signed an order (1) retaining both parents as joint managing conservators but giving Cayne the exclusive right to designate A.D.'s primary residence, (2) ordering that Sommer's weekend possession be supervised at a facility named "The Clubhouse" and her mid-week possession be supervised at Cayne's residence or a place of his choice, and (3) ordering Sommer to pay child support.

## II. REFUSAL TO DISMISS CAYNE'S PETITION TO MODIFY

In her first issue, Sommer contends the trial court erred by refusing to dismiss Cayne's petition to modify. Sommer moved to dismiss on the ground that Cayne failed to comply with Texas Family Code section 156.102, which provides:

> (a) If a suit seeking to modify the designation of the person having the exclusive right to designate the primary residence of a child is filed not later than one year after . . . the date of the rendition of the order . . . . , the person filing the suit shall execute and attach an affidavit as provided by Subsection (b).

> (b) The affidavit must contain, along with supporting facts, at least one of the following [three] allegations:

3

(1) that the child's present environment may endanger the child's physical health or significantly impair the child's emotional development; [the allegation at issue in the present case] . . .

(c) The court shall deny the relief sought and refuse to schedule a hearing for modification under this section unless the court determines, on the basis of the affidavit, that facts adequate to support an allegation listed in Subsection (b) are stated in the affidavit. If the court determines that the facts stated are adequate to support an allegation, the court shall set a time and place for the hearing.

Tex. Fam. Code Ann. § 156.102 (a)–(c) (West 2014).

Section 156.102 was designed to promote stability in conservatorship of children by discouraging relitigation of custodial issues within a short period after the custody order, through a heightened standard of verified pleading. *Burkhart v. Burkhart*, 960 S.W.2d 321, 323 (Tex. App.—Houston [1st Dist.] 1997, pet. denied). To evaluate the sufficiency of the affidavit, the trial court must determine whether the sworn facts, if true, justify a hearing on the motion to modify. *Id.*

Our court and some sister courts have reviewed a trial court's ruling on whether a petitioner complied with section 156.102 for abuse of discretion, and we have found no conflicting standard from the Beaumont Court of Appeals. *See Stashak v. Stashak*, No. 14-02-00700-CV, 2003 WL 21230406, at *2 (Tex. App.—Houston [14th Dist.] May 29, 2003, no pet.) (mem. op.); *see also In re D.W.J.B.*, 362 S.W.3d 777, 780 (Tex. App.—Texarkana 2012, no pet.); *Burkhart*, 960 S.W.2d at 323.[2] A trial court abuses its discretion if it acts without reference to

___

[2] *But see In re C.S.*, 264 S.W.3d 864, 872–73 & n.6 (Tex. App.—Waco 2008, no pet.) (applying *de novo* standard, reasoning challenge to affidavit is tantamount to plea to the jurisdiction challenging plaintiff's pleadings). Although we will apply the abuse-of-discretion standard, our decision would be the same under the more stringent *de novo* standard.

any guiding rules or principles or its decision is arbitrary or unreasonable. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

In the affidavit, Cayne averred:

> I had visitation with [A.D.], on the weekend of December 3, 2010.
>
> Thereafter, on December 9, 2010, I received a telephone call from Detective Ben Hanks of the Nederland Police Department telling me that my ex-wife, [Sommer], had accused me of sexual assault against [A.D.] during my Thanksgiving weekend possession. Detective Hanks asked that I go in and speak with him and I immediately left my office and went in and talked to Detective Hanks. I spoke with Detective Hanks over the telephone a few times during the next week. About one week later[,] I received a phone call from Detective Hanks saying that the case was unfounded and he was closing the case.
>
> I began trying to contact Sommer by telephone and text concerning my visitation (*which included visitation for the Christmas holidays*) with my daughter. I continuously tried to contact Sommer and never received a response.
>
> On January 26, 2011, my attorney filed a Motion for Enforcement because I had not seen [A.D.] and Sommer would not call me back. Sommer was served on January 31, 2011.
>
> Thereafter, I received notice that Sommer had filed a Petition to Take Deposition to Investigate Potential Claim or Suit on me for sexual assault of [A.D.]. This petition was sent to my attorney and I was contacted by my attorney's office.
>
> On February 7, 2011, Sommer filed a Motion to Modify Decree and my attorney filed a Counterpetition to Modify Decree on my behalf.
>
> Sommer continues to assert that I committed sexual assault against [A.D.]. To this day[,] my family continues to receive text messages from Sommer's mother saying that I am a sexual molester and Sommer continues to spread rumors throughout Buna that I am a sexual molester. Sommer continues to bring [A.D.] to the same daycare facility that she has been going to. Sommer has brought

5

[A.D.] to the Garth House for evaluation. Sommer also filed a case against me with Child Protective Services on December 7, 2010 alleging physical abuse and sexual abuse against [A.D.]. The report of Child Protective Services reported the finding "ruled out". Sommer has also had [A.D.] examined by her pediatrician . . . and 2 SANE nurses. I feel that this continued harassment against me is causing stress and trauma to my 2-year old daughter. [Sommer's] actions present a clear and present danger to the child's safety and welfare.[3]

According to Sommer, the averment that she reported her suspicions of abuse did not allege "the child's present environment may endanger the child's physical health or significantly impair the child's emotional development." *See* Tex. Fam. Code Ann. § 156.102(b)(1). Sommer argues that instead (1) such actions would be viewed as responsible parenthood, and (2) any "harassment" of Cayne did not translate into "stress and trauma" to A.D.

However, the crux of the affidavit was not just that Sommer reported her suspicions but that she continued to make false accusations that Cayne sexually abused A.D. Additionally, Cayne essentially alleged Sommer was engaging in such conduct because Cayne attempted to enforce his visitations rights. Moreover, the trial court could have found that Cayne sufficiently alleged Sommer's behavior may significantly impair A.D.'s emotional development because (1) the two-year-old may be subjected to more sexual-assault ("SANE") examinations, and (2) there

---

[3] As noted above, Cayne filed his affidavit several months after his petition—but before Sommer filed her motion to dismiss. Regardless, the trial court properly construed the affidavit as amending the petition, as permitted under the procedural rules, and thus Cayne "attach[ed]" an affidavit to the petition. *See* Tex. R. Civ. P. 62, 63; *see also* Tex. Fam. Code Ann. § 156.004 (West 2014) (providing Texas Rules of Civil Procedure applicable to original suit apply to suit for modification of a conservatorship and possession order); *In re E.R.L.C.*, No. 05-06-01203-CV, 2008 WL 274058, at *2 (Tex. App.—Dallas Feb. 1, 2008, no pet.) (mem. op.) (holding that, although original petition to modify lacked requisite affidavit, trial court properly held hearing because amended petition with supporting affidavit was filed seven days before hearing).

6

is a general harm inherent in the child being the subject of the false accusations and used as a weapon in a custody dispute.

Sommer also suggests the trial court's finding conflicted with its remark when previously denying Cayne's first motion for temporary orders: "I do not feel that the child is in danger." We disagree. To temporarily change which person has the right to designate residency while a suit for modification is pending, the trial court must find, inter alia, that "the order is necessary because the child's present circumstances **would** significantly impair the child's physical health or emotional development." *See* Tex. Fam. Code Ann. § 156.006(b)(1) (West 2014) (emphasis added). In contrast, the inquiry relative to the section 156.102 affidavit is whether it **alleges** facts showing "the child's present environment **may** endanger the child's physical health or significantly impair the child's emotional development." *Id.* § 156.102(b)(1) (emphasis added). There is no requirement that the petitioner prove the allegations in the affidavit in order to obtain a hearing on the motion for permanent modification. *See id.* Therefore, the trial court's finding of no danger when denying Cayne's first motion for temporary orders did not negate the trial court's decision that Cayne's affidavit was sufficient to justify a hearing on his petition for permanent modification. We overrule Sommer's first issue.

### III. MODIFICATION OF CUSTODY

We will next consider Sommer's fifth issue because the evidence on this contention is also relevant to some other issues. Sommer contends the trial court abused its discretion by modifying the divorce decree to give Cayne custody. Sommer presents her complaint as though the trial court served as fact finder on the issue. However, the trial court was required to effectuate the jury's verdict. *See* Tex. Fam. Code Ann. § 105.002 (c)(1)(D) (West 2014). Accordingly, we will treat Sommer's complaint as challenging sufficiency of the evidence to support the

7

jury's finding. *See Corrales v. Dep't of Family & Protective Servs.*, 155 S.W.3d 478, 488 (Tex. App.—El Paso 2004, no pet.) (recognizing abuse-of-discretion standard ordinarily applicable when trial court decides conservatorship issues does not apply when issue is submitted to a jury and instead its findings are subject to traditional sufficiency review).

The trial court submitted the following jury charge, in pertinent part:

> For the Order that designates [Cayne] or [Sommer], as Joint Managing Conservators with the exclusive right to establish the primary residence of the child to be modified, it must be proven that:
>
> 1. The circumstances of [A.D.], [Cayne] or [Sommer], have materially and substantially changed since July 20, 2010; and
>
> 2. The appointment of [Cayne], as the conservator who has the exclusive right to designate the primary residence of [A.D.], in place of [Sommer], would be in the best interest of [A.D.].[4]

## QUESTION 1

> Should the order that designates Sommer C. Douga the conservator who has the exclusive right to designate the primary residence of [A.D.] be modified to designate Cayne Douga as the conservator who has that exclusive right?

The jury answered affirmatively.

When examining a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id.* at 827. The evidence is legally sufficient if it would enable a reasonable and fair-minded person to reach the verdict under review. *Id.* When, as here, a party

---

[4] *See* Tex. Fam. Code Ann. § 156.101 (a)(1)(A) (West 2014).

challenges legal sufficiency relative to an adverse finding on which she did not bear the burden of proof, she must show that no evidence supports the finding. *See Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011). The fact finder is the sole judge of witness credibility and the weight to give their testimony. *See City of Keller*, 168 S.W.3d at 819. When a party challenges factual sufficiency relative to an adverse finding on which she did not have the burden of proof, we consider all the evidence and will set aside the finding only if the evidence supporting it is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

## A.    The Evidence

Sommer challenges the finding that there was a requisite change in circumstances. Cayne relies on Sommer's false accusations that he sexually abused A.D. as the change in circumstances because the accusations began after the divorce decree. The evidence presented at trial showed the following.

Initially, there were no problems when Cayne exercised his visitation rights. However, the accusations began after A.D. visited Cayne for Thanksgiving 2010. According to Sommer, when she was changing A.D.'s diaper, the child pushed Sommer's hands away and cried, "No, Daddy, no," and Sommer noticed redness in A.D.'s vaginal area. When Cayne picked up A.D. for a visit in early December 2010, Sommer asked who changed A.D.'s diapers during Cayne's visitation. Cayne replied that it was him or his mother. Sommer claimed that A.D. made the same "outcry" when she returned from that visit. When Cayne arrived for his next visit, Sommer and A.D. were not home, and Sommer would not return Cayne's calls. Sommer did not discuss any suspicions regarding abuse with Cayne at that

9

time. Cayne first learned of a complaint when he was contacted by the police.

In early December 2010, Sommer made her report to the Nederland police. Detective Ben Hanks, who conducted an investigation, testified Cayne was the only person mentioned as a suspect. Detective Hanks characterized Cayne as very cooperative. After Detective Hanks interviewed Cayne, Sommer became upset the officer had not arrested Cayne. According to Detective Hanks, Sommer eventually became irrational and uncooperative. Further, while the investigation was ongoing, Sommer's mother texted Cayne's mother stating, "My granddaughter will not be in the presence of a child molester."

Sommer also took A.D. to her pediatrician and presented the complaint as a "question of sex abuse." A.D. was first examined by a nurse practitioner who diagnosed vulvitis, an inflammation of skin around the vagina. When the pediatrician examined A.D.'s vaginal area, she did not become upset or push the doctor's hand away in any manner other than typical for a child that age. The pediatrician instructed Sommer to contact the police and obtain a SANE exam.

The SANE practitioner found a few abrasions in A.D.'s vaginal area and on a nipple and a microscopic tear in A.D.'s anus. The pediatrician acknowledged it is not unusual for a child that age to have vulvitis or such abrasions and that an anal tear could be caused by an impacted bowel movement. The pediatrician testified she would not have suspected sexual abuse based on the physical findings and reported a suspicion of abuse only because of Sommer's complaint.

Detective Hanks confirmed the medical records did not support a conclusion that a sexual assault occurred. As a result of his investigation, Detective Hanks determined there was insufficient evidence to forward the case to the District Attorney. CPS in Jasper County also conducted a thorough investigation. When it was concluded in late February 2011, the disposition was "Ruled Out."

10

It was during this same time frame that Sommer was held in contempt for withholding Cayne's visitation rights, and Sommer retained the personal-injury attorney, who took Cayne's deposition. Sommer testified Cayne's answers eased her mind on "some things" but not others. When the investigation was concluded, Sommer dismissed her own previously-filed petition to modify but testified she remained "frustrated" and her questions were not all answered.

Tanya Goldbeck, a family therapist, began counseling Cayne and Sommer in July 2011, pursuant to the trial court's order. Sommer persisted in the accusations over the course of the counseling although Cayne urged her to stop, for the child's sake, and Goldbeck explained to Sommer there was no abuse. Sommer asserted she had videos of A.D. stating Cayne touched her "crotch." Goldbeck opined such terminology was atypical for a child that age and was consistent with being coached or picking up on the term and receiving attention for using it. Goldbeck testified that whatever statements A.D. made about Cayne, she also made about multiple persons, including Sommer's fiance, Brandon; A.D. would say that anyone she was with was "touching her," but Sommer told Goldbeck it was only Cayne. Additionally, at some point, Cayne told Sommer that A.D. had made similar statements about Brandon. Eventually during counseling, Sommer conceded Cayne may not have abused A.D. but thought someone at his home had done so. Then, when Goldbeck disproved a claim by Sommer that Cayne had not maintained health insurance on A.D., Sommer became angry and walked out of the last session, stating, "I cannot trust that Cayne is not abusing our daughter."

Goldbeck opined Cayne has always put A.D. first, whereas Sommer pursued the accusations based on her need to prove she was right and control Cayne by harming his reputation. Cayne expressed concern to Goldbeck that Sommer was recording A.D.'s conversations and play activities. During the counseling, it was

11

discovered that, unbeknownst to Cayne, Sommer had started A.D. in treatment with a counselor who specializes in sexual assault victims. Goldbeck opined that A.D. will be adversely impacted if Sommer has primary custody and her behavior continues.

In October 2011, another formal accusation was made. A.D.'s daycare reported to a child-abuse hotline that A.D. made an "outcry" against both Cayne and Brandon. CPS in Orange County (where the daycare was located) conducted an investigation, but against both men. When CPS contacted Sommer about this episode, she made another police report. Despite CPS reporting A.D. mentioned both men, Sommer told the police officer that A.D. was "a victim of continual sexual abuse at the hands of [her] father." A.D. was referred for an assessment at a facility named "Garth House," which specializes in complaints concerning children. Detective Hanks, who viewed the Garth House interview, opined A.D. had been coached to make certain statements, such as claiming Cayne or Brandon "hurt my hiney" or touched my "tee tee." The detective also testified that such statements could merely indicate A.D. experienced pain while being wiped or having medication applied, as opposed to indicating a sexual assault. Further, another SANE exam revealed no injuries. The CPS investigation was closed as "unable to determine."

At some point in Spring 2012, another accusation was made although the details are sparse. The record indicates CPS in Jasper County conducted an investigation because that county sheriff and the Texas Rangers were contacted with an allegation the trial court and authorities in Jefferson County had been "unfair." Again, the charges were determined to be "unfounded." Sommer claimed she did not initiate this investigation. However, Goldbeck suggested Sommer initiated the investigation by sending a pair of A.D.'s underwear to those

12

authorities. At one point, Sommer had taken the underwear from Cayne's home and asked Goldbeck to examine a photo and determine if the underwear contained any discharge, which Goldbeck declined.

Carmen Kaimann, a psychologist, examined Sommer in May 2012 (several months before trial), pursuant to the trial court's order. During the interview, Sommer still maintained that A.D. had been sexually assaulted. Dr. Kaimann described Sommer as "very . . . obsessive-compulsive" and a "very cognitively rigid, stubborn individual" and thus inclined to maintain her belief regarding the alleged sexual abuse despite evidence to the contrary.

Finally, a Facebook page entitled "Saving Grace" was admitted at trial. Sommer's mother claimed responsibility for the page, although Cayne testified Sommer created the page. Regardless, the page originated from Sommer's family. It includes posts and "likes" from Sommer and Brandon's mother/Sommer's future mother in law. A lengthy, emotional post was in the first person, as though written by A.D. The purpose of the page was a plea for help because A.D. was being sexually abused at her father's home and the trial court and authorities refused to "protect me." The posts began in February 2011—the same month the first formal allegation was ruled out. However, the printout introduced at trial shows the page was still operating in November 2011—after authorities and professionals had informed Sommer there was no abuse.

## B.    Sufficiency Analysis

Sommer contends there was no change in circumstances because various witnesses, including Cayne, authorities, and professionals, did not fault Sommer for reporting the first "outcry." However, the jury had the opportunity to evaluate Sommer's credibility and was free to question her motives. The jury could have disbelieved Sommer's account of the first "outcry," or at least that A.D. mentioned

13

only Cayne, because Sommer has constantly focused solely on Cayne despite A.D.'s making similar statements about other persons. The jury could have concluded that Sommer and her family were too quick to accuse Cayne of sexual abuse without discussing the matter with him, considering A.D. might be reacting to pain during her diaper change, or awaiting the outcome of the investigation. Even if the jury believed Sommer's account of the first "outcry" and accepted her report was justified, the jury heard ample evidence that (1) Sommer and her family doggedly perpetuated the accusations over a year-a-half period although authorities and professionals in multiple counties determined they were unfounded, and (2) Sommer's behavior was driven by a need to control Cayne—not protect the child.

Sommer also emphasizes that A.D.'s daycare, not Sommer, initiated the investigation in October 2011. However, the jury could have rationally inferred Sommer was responsible for the October 2011 accusations because (1) evidence indicated A.D. had been coached or received reinforcement for her statements, and (2) the episode shortly followed the counselling sessions in which Sommer insisted the abuse occurred. The jury could have also concluded Sommer was responsible for the third formal accusation based on her attempts to obtain examination of A.D.'s underwear—which precipitated that investigation. Moreover, the jury heard that, in addition to the formal allegations, Sommer persisted in her accusations by obtaining Cayne's deposition, insisting during the counselling and psychological evaluations the abuse occurred, and through the Facebook page. Based on the entire pattern of events, the jury was free to accept Cayne's characterization: "Every time she's had the opportunity to have this child, you see what's happened. . . . This has gone way too far."

At trial, Sommer acknowledged Cayne did not sexually abuse A.D. Nonetheless, the jury could have rationally inferred Sommer made this concession

14

only for trial and the accusations would likely persist, considering her past behavior and psychological traits described by the professionals. Further, she believed the accusations several months before trial with no plausible explanation for the sudden transformation. This likelihood of future accusations supported both the change-in-circumstances and best-interest findings, although Sommer challenges only the change-in-circumstances component. In this regard, Sommer asserts the only change in circumstances was that Cayne was hurt and angry over the accusations. To the contrary, the jury could have concluded there was a danger to A.D.'s emotional development if Sommer retained custody because the child may be subjected to further (1) SANE exams, (2) counseling and evaluations, (3) having her conversations and activities recorded, (4) overhearing the accusations, thereby affecting her relationship with Cayne, and (5) generally living in a poisonous environment where she is used as a weapon against Cayne. Finally, the jury heard evidence that Cayne is a devoted father, A.D. thrives in his care, and his family is very involved in raising the child.

In summary, the evidence is legally and facually sufficient to support the jury's finding. We overrule Sommer's fifth issue.

## IV. EVIDENCE OF TEMPORARY MODIFICATION

In her second issue, Sommer argues the trial court erred by admitting testimony that the court had temporarily modified the divorce decree to give Cayne custody.

During direct examination of Cayne, his attorney asked where the child now resided. Outside the jury's presence, Sommer objected to any reference to the terms of the temporary orders based on Texas Rules of Evidence 403 and 605. The trial court overruled both objections and allowed Sommer a running objection "as to anything that was changed by virtue of the temporary orders."

15

Sommer challenges the following portions of testimony that followed her objection:

**Direct-examination of Cayne:**

Q.     Where's your child reside right now?

A.     With me.

Q.     How often has she -- let me rephrase that.  How long has she lived with you?

A.     She's been with me for nine months.

Q.     When does Sommer see her?

A.     On Wednesdays from 6:00 to 8:00 and Sundays from 2:00 to 6:00.

Q.     And that's it?

A.     That's it.

**Cross-examination of Sommer:**

Q.     Again, where's your daughter live right now?

A.     With Cayne.

Q.     And how long has she lived with Cayne?

A.     Since December 6th.

Q.     What year?

A.     2011.

Q.     So, 2011, December, right?

A.     (Moving head up and down)

       * * *

Q.     How often do you see her?

A.     Twice a week.

Q.     For how long?

A.     Six hours total.

Q.     What days of the week do you see her?

16

A. Wednesday for two hours and Sundays for four.

Q. Can you leave with her and go anywhere or do anything?

A. No.

* * *

Q. So, you can't?

A. Right.

Q. You just get to go to Cayne's house where your child lives and get to visit with her a couple of hours?

A. Correct.

Q. Right?

A. Yes.

Q. In the last nine months, she hasn't lived with you, has she?

A. No.

* * *

Q. Okay. Now you told -- you told your -- your lawyer that you're pleading this case to the jury. Why are you going to the jury?

A. To get a fair judgment and trial.

Q. You didn't think you got a fair judgment last time?

A. No.

* * *

Q. Since Cayne has had this child for the last months, have you paid the support you were ordered to?

A. Yes.

Q. You have?

A. (Moving head up and down)

Q. How much?

A. Whatever the amount was total. I don't know -- I haven't added it up for the past nine months.

Q. You haven't what?

17

A.    I don't add it up for the past nine months.  I just know what I'm supposed to pay.

Q.    And you paid it every month?

A.    I haven't paid this month, no.

Q.    So, you're only behind this one month?

A.    Uh-huh

Consistent with her trial objection, Sommer contends the trial court violated Rules of Evidence 605 and 403 by admitting the testimony.

Rule 605 provides, "The judge presiding at the trial may not testify in that trial as a witness.  No objection need be made in order to preserve the point."  Tex. R. Evid. 605.  Sommer cites *In re T.T.*, 39 S.W.3d 355, 357–59 (Tex. App.—Houston [1st Dist.] 2001, no pet.), in which the court held that, during a jury trial on termination of parental rights, the trial court erred by admitting its temporary order placing the children in foster care.  In the order, the trial court found there was a danger to the children if they remained in the parents' home and removal was in the children's best interest—essentially the same issues the jury was tasked with deciding.  *Id.* at 358.  The appellate court reasoned that the effect of admitting the trial court's written findings was the same as if the judge had violated Rule 605 by testifying about those statements.  *Id.* at 359.  Sommer acknowledges the trial court did not admit any temporary orders affirmatively showing the trial court had found Cayne should have custody—the same issue the jury was tasked with deciding.  However, Sommer argues that admitting the above-cited testimony was tantamount to admitting the orders because the testimony insinuated A.D. had been living with Cayne pursuant to a court order.

Rule 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."  Tex. R. Evid. 403.  When a

18

party objects under Rule 403, a trial court must conduct a balancing test, weighing the danger of unfair prejudice against the probative value of the evidence. *See Campbell v. State*, 118 S.W.3d 788, 797 (Tex. App.—Houston [14th Dist. 2003, pet. denied). Sommer posits the above-cited testimony served no purpose other than prejudicing the jury against Sommer.

Even if admitting the testimony was tantamount to admitting the temporary orders or the danger of unfair prejudice outweighed the probative value, any error was harmless. To obtain reversal of a judgment based on error in admitting evidence, the appellant must show the error probably caused rendition of an improper judgment. Tex. R. App. P. 44.1(a)(1); *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). In making this determination, we must review the entire record. *Interstate Northborough P'ship*, 665 S.W.3d at 220. Typically, to obtain reversal because evidence was erroneously admitted, the complaining party must demonstrate the judgment turns on the particular evidence admitted. *Id.*; *Campbell*, 118 S.W.3d at 797.

Sommer suggests that evidence the trial court had awarded Cayne temporary custody likely persuaded the jury that he should be awarded permanent custody. Sommer relies on a question the jury asked the trial court during deliberations: "Why does [Cayne] currently have custody of the child?" The court did not answer that specific question and replied that the jury could consider only the evidence and the charge of the court. Contrary to Sommer's suggestion, this question indicates the jury had **not** gleaned from the testimony that Cayne's current custody was per court order. Regardless, even if the jury subsequently gleaned Cayne's current custody was per court order, the jury heard ample evidence (as outlined above) otherwise supporting its finding that Cayne should have permanent custody. Accordingly, we conclude the jury's finding did not turn

on any evidence indicating the trial court had temporarily modified custody prior to trial. *See In re T.T.*, 39 S.W.3d at 360–61 (holding error in admitting temporary order that children were in danger in their home and removal was in their best interest was harmless as to termination of father's parental rights because ample evidence admitted during jury trial demonstrated his abuse of the children).[5] We overrule Sommer's second issue.

## V. SOMMER'S REQUESTED SPECIAL CHARGE

In her third issue, Sommer contends the trial court erred by refusing to submit to the jury her "requested special charge." We review a trial court's refusal to submit a particular instruction under an abuse-of-discretion standard. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006) (per curiam).

The instruction actually submitted tracked Family Code section 156.101 which provides, in pertinent part, that a court may modify a conservatorship order if (1) "the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since . . . the date of the rendition of the order," and (2) modification would be in the best interest of the child. *See* Tex. Fam. Code Ann. § 156.101 (a)(1)(A).

Sommer requested in writing the following additional instruction:

---

[5] On appeal, Sommer also contends the danger of confusion to the jury from the testimony outweighed any probative value and cites the jury's question as showing it was confused. However, Sommer waived this complaint because the only basis for her Rule 403 objection at trial was that the "information is more prejudicial than probative." *See* Tex. R. App. P. 33.1(a)(1); *Moran v. Mem'l Point Prop. Owners Ass'n, Inc.*, 410 S.W.3d 397, 407 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (recognizing that to preserve error, appellate complaint must comport with objection at trial). Regardless, we conclude any confusion over why Cayne currently had custody would not have affected the jury's decision that he should have permanent custody, considering the ample evidence supporting its decision.

20

## Modification of Conservatorship Brought Within One Year of Prior Order

> Public policy in Texas disfavors disruption of custodial arrangements within the first year after a divorce decree has established custody, except in cases in which the child's physical health or emotional development is imperiled.

Sommer did not request any other instructions or otherwise object to the charge as submitted.

Sommer's requested "charge" was essentially a quote from case law explaining the policy reasons behind section 156.102(b)(1)—the requirement that to obtain a hearing on modification of custody within a year after the divorce decree, the petitioner must file an affidavit alleging "the child's present environment may endanger the child's physical health or significantly impair the child's emotional development." *See, e.g.*, *Burkhart*, 960 S.W.2d at 323; *see also* Tex. Fam. Code Ann. § 156.102(b)(1). Sommer cites no authority requiring the trial court to inform the jury regarding the policy reasons underlying section 156.102(b)(1).

Further, this language generally stating that the law "disfavors" modification within a year after the divorce decree unless "the child's physical health or emotional development is imperiled" did not constitute a jury **instruction**. This language would not have instructed the jury that, in order to modify custody, it must find A.D.'s "present environment may endanger the child's physical health or significantly impair the child's emotional development." *See* Tex. Fam. Code Ann. § 156.102(b)(1). Sommer's tendered "instruction" did not correctly track section 156.102(b)(1), and she made no other objection to the charge. Assuming, without deciding, that the trial court was required to submit an instruction tracking section 156.102(b)(1), because the tendered "instruction" was not in substantially

21

correct form, the trial court did not abuse its discretion in refusing the requested "instruction." *See* Tex. R. Civ. P. 278 ("Failure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment."). We overrule Sommer's third issue.

## VI. ORDER THAT SOMMER'S POSSESSION BE SUPERVISED

In her fourth issue, Sommer contends the trial court abused its discretion by ordering that Sommer's possession and access be supervised because (1) there was no pleading supporting supervised visitation, and (2) the evidence was insufficient to support such relief.

In Cayne's petition to modify, he requested that Sommer be allowed to exercise standard visitation. After the jury verdict on modification of custody, the trial court addressed Sommer's visitation rights. Sommer requested a standard possession order consistent with Cayne's pleading. Cayne then offered his own testimony on the visitation issue and referred to the evidence presented at trial of the custody issue. After this testimony, Sommer objected to supervised visitation on the ground the issue was not pled or tried by consent. In its written order, the court recited "credible evidence has been presented to depart from standard possession because: (1) the parties have no communication; (2) the families are at odds; and (3) the child is in danger of physical and mental harm."

### A. Pleading for supervised visitation

A trial court may not enter judgment on a claim that was not sufficiently pleaded or otherwise tried by consent. *See* Tex. R. Civ. P. 301 (providing the "judgment of the court shall conform to the pleadings . . ."); *Stoner v. Thompson*,

22

578 S.W.2d 679, 682–83 (Tex. 1979); *Maswoswe v. Nelson*, 327 S.W.3d 889, 894 (Tex. App.—Beaumont 2010, no pet.); *Herrington v. Sandcastle Condominium Ass'n*, 222 S.W.3d 99, 102 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

Texas follows a "fair notice" standard for pleading, meaning we consider whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000). A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim. *Id.* at 897. The purpose of this rule is to give the opposing party information sufficient to enable her to prepare a defense. *Id.* A court should liberally construe a petition in favor of the pleader if no special exceptions are filed. *Id.*

On appeal, Sommer reiterates that Cayne pled only for standard possession and the issue of supervised visitation was not tried by consent. Cayne contends, inter alia, that liberally construing all the pleadings, he gave Sommer fair notice he was requesting supervised visitation. We agree with Cayne.

Although Cayne requested standard possession for Sommer in his petition to modify, several months later, he filed his supporting affidavit. In the affidavit, Cayne alleged facts that would support not only giving him custody but also ordering that Sommer's visitation be supervised. Specifically, Cayne averred that due to Sommer's false sexual-abuse accusations, there was a "clear and present danger to the child's safety and welfare."

Then, while his petition to modify was pending, Cayne filed multiple motions, requesting temporary orders for A.D.'s safety and alleging the child was in danger in Sommer's care. The trial court granted the second motion, giving Cayne custody and ordering that Sommer's visitation be supervised. At the

23

hearing, the court remarked that Sommer was causing "harm" and "abuse" to A.D. through her "continuing course of conduct." Sommer did not object to this restriction on the ground that she lacked notice that Cayne sought such relief. This restriction remained in effect until trial of Cayne's petition for permanent modification.

In summary, Cayne's pleadings, as a whole, alleged A.D. was in danger while in Sommer's care. Such allegation, together with the trial court's temporary orders, provided fair notice that Cayne sought to prevent A.D. from being in Sommer's care. Accordingly, the pleadings supported supervised visitation.

## B. Sufficiency challenge

There is a rebuttable presumption that the "standard possession order" prescribed in the Family Code provides reasonable minimum possession for a parent named as possessory or joint managing conservator and is in the child's best interest. Tex. Fam. Code Ann. § 153.252 (West 2014); *see id.* §§ 153.3101–.317 (West 2014) (standard possession order). The standard possession order contemplates the custodial conservator will "surrender" the child to the other conservator at certain designated times. *See id.* § 153.316. The trial court may depart from the standard possession order based on (1) the age, developmental status, circumstances, needs, and best interest of the child, (2) the circumstances of the conservators, and (3) any other relevant factor. *See id.* § 153.256 (West 2014). The terms of an order that imposes restrictions or limitations "on a parent's right to possession of or access to a child may not exceed those that are required to protect the best interest of the child." *Id.* § 153.193 (West 2014).

We review a trial court's departure from the standard possession order for abuse of discretion. *In re Q.D.T.*, No. 14-09-00696-CV, 2010 WL 4366125, at *6 (Tex. App.—Houston [14th Dist.] Nov. 4, 2010, no pet.) (mem. op.); *In re C.B.M.*,

24

14 S.W.3d 855, 858 (Tex. App.—Beaumont 2000, no pet.). Under the abuse-of-discretion standard, legal and factual sufficiency are not independent grounds of error, but are relevant factors in assessing whether the court abused its discretion. *Q.D.T.*, 2010 WL 4366125, at \*2. A trial court does not abuse its discretion when some evidence of a substantive and probative character supports its order. *Id.*

Sommer contends the supervised-visitation requirement exceeded what was necessary to protect A.D.'s best interest, *see* Tex. Fam. Code Ann. § 153.193, because (1) Cayne agreed Sommer is a "good mother," and (2) Dr. Kaimann acknowledged Sommer is not "an abusive parent" and nothing indicated the child "is in any clear and present danger." Considering this testimony in context, the witnesses essentially testified Sommer did not endanger A.D. by directly abusing her. However, the trial court was entitled to believe "the child is in danger of physical and mental harm" in Sommer's unrestricted care based on the likelihood she will continue her accusations. In addition, at the post-trial proceeding on the possession issue, Cayne testified it was in A.D.'s best interest for supervised visitation to continue. Cayne expressed concern A.D. will again be the subject of false accusations and subjected to further SANE exams if left in Sommer's care. Accordingly, the trial court did not abuse its discretion by ordering supervised visitation. We overrule Sommer's fourth issue.

Having overruled all of Sommer's issues, we affirm the trial court's order.


/s/     John Donovan
         Justice


Panel consists of Justices Christopher, Donovan, and Brown.

25