

# NUMBER 13-22-00002-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF J.J.G., A CHILD

### On appeal from the 28th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Silva and Peña
### Memorandum Opinion by Chief Justice Contreras

This appeal concerns an order modifying the parent-child relationship between J.J.G.,[1] now a seventeen-year-old child, and his parents. Appellant Diana Vega Ybarra, J.J.G.'s mother, argues by one issue that the trial court erred by granting his father, appellee Robert Guthrie, the exclusive rights to designate the child's primary residence and to make decisions concerning his education. Ybarra contends this was erroneous

---

[1] We refer to the child by his initials, as the parties do. *See* TEX. FAM. CODE ANN. § 109.002(d) ("On the motion of the parties or on the court's own motion, the appellate court in its opinion [in a suit affecting the parent-child relationship] may identify the parties by fictitious names or by their initials only.").

because Guthrie "did not ask for that relief, the parties did not stipulate to the change, [and] the issue was not tried by consent." Because we agree, we reverse and remand.

## I. BACKGROUND

J.J.G. was born to Ybarra on October 28, 2005, and Guthrie executed an Acknowledgement of Paternity. In 2007, the trial court signed an order appointing both parents joint managing conservators, granting Ybarra the right to determine J.J.G.'s residence without regard to geographic location, granting Guthrie visitation rights, and requiring Guthrie to pay $137 per month in child support.

More than twelve years later, on January 15, 2020, the Office of the Attorney General (OAG) filed a "Petition for Confirmation of Non-Agreed Child Support Review Order" alleging that Guthrie's financial circumstances had changed since the 2007 order and including a proposed order which would increase the amount of monthly child support due to $1,382. Ybarra and counsel for the OAG signed the proposed order. That same day, Guthrie filed a pro se request for a hearing on the proposed order, arguing that "the amount issued [sic] is more than I will be able to pay due to temporary work and time between jobs." A hearing was set for March 10, 2020.

On February 12, 2020, Guthrie, represented by counsel, filed an "Original Petition to Modify Parent-Child Relationship." The petition alleged that "the familial circumstances of [Guthrie], a conservator of the child, have materially and substantially changed since the" 2007 order. In a section entitled "Agreed Parenting Plan," the petition stated:

13.    [Guthrie] believes that the parties will enter into a written agreed parenting plan containing modifications to provisions for conservatorship, possession, support of the child, and any variations from the standard possession order. If an agreed parenting plan is submitted, [Guthrie] petitions this Court to find the plan in the child's best interest and to render an order in accordance with the modified

parenting plan, or incorporating it by reference. If an agreed parenting plan is not submitted or if submitted and found not to be in the best interest of the child, [Guthrie] petitions for entry of an order with the modified parenting plan that this Court finds to be in the best interest of the child.

The petition also contained a section entitled "Possession and Access," which stated in its entirety as follows:

15.     [Guthrie] petitions the Court to order that the requested variance from the standard possession order is in the best interest of the children [sic].

16.     [Guthrie] petitions the Court to render an order pursuant to Subchapter F, Chapter 153 of the Texas Family Code, that provides [Ybarra] and [Guthrie] with the rights of possession of the child in accordance with the terms and conditions of a standard possession order subject to the variance requested above.

*Electronic Communication*

17.     [Guthrie] petitions this Court to order reasonable periods of electronic communication with the child to supplement the conservator's periods of possession of the child.

The petition further stated: "[Guthrie] petitions the Court to increase the amount of child support until the support obligation terminates." On April 27, 2020, Ybarra filed a handwritten pro se response to Guthrie's petition.

The record reflects that a hearing was held on the OAG's and Guthrie's petitions on January 13, 2021. Guthrie's attorney and the OAG's attorney appeared; Ybarra did not appear.[2] At the hearing, Guthrie testified that J.J.G. currently lives with Ybarra, and he conceded that he did not see the child between 2007 and 2020. However, he agreed that he has had "continuous contact" with J.J.G. since "February and March" of 2020.

---

[2] Ybarra does not dispute that she was given timely notice of this hearing. *See Mabon Ltd. v. Afri-Carib Enters., Inc.*, 369 S.W.3d 809, 813 (Tex. 2012) ("Entry of a post-answer default judgment against a defendant who did not receive notice of the trial setting or dispositive hearing constitutes a denial of due process under the Fourteenth Amendment of the United States Constitution.").

Guthrie stated J.J.G. was struggling in sixth grade but "I brought him with me for 30 days to complete summer school to allow him to graduate, to move on to the 7th grade. Otherwise, he would have been retained in the 6th grade." Since August of 2020, the child had been living with Ybarra.

Guthrie identified a report card which indicated that J.J.G. had attended only 84 out of a total of 526 class periods in the fall of 2020, while he was living with Ybarra. Additionally, J.J.G. had failing grades in several subjects. When asked how J.J.G. responded to the idea of coming to live with him, Guthrie stated:

> Not very good. He wasn't—again, we have been distant most of his life. So it is certainly a little bit more difficult when it comes down to that. He much rather would be where he is at. But, again, you know, his grades are not going to follow him very far like this. He is going to end up having some serious problems here in the next few years. Once he is 18 and able to make his own decision[s], these things are really going to come back to him. If he can't get out of middle school, high school, I'm not sure how that is going to go.

The following colloquy occurred:

Q. [Guthrie's counsel]    You understand that if the court grants you custody of the child, and he doesn't want to be there, you are going to have an uphill battle with a teenager?

A. [Guthrie]    I do. I'm just going to have to do what is in his best interest. You know, you may not like it now, but you will thank m[e] later, I think. I'm going to have to make him understand what's going on. He shows that he has got ideas and things he wants to do. But again, . . . what he wants to do and what he is doing are two different things.

Now, him being here with us,[3] yes, it is going to be an uphill battle. I'm not sure what I can actually do about it, but I am certainly going to seek help of others to advise me in the best direction to go.

---

[3] The record does not contain any information about other members of Guthrie's household.

4

On cross-examination, Guthrie stated that he was laid off from his job as a construction site safety manager in October of 2020 and, at the time of the hearing, he was receiving unemployment benefits of around $500 per week. However, he agreed that, during the time he worked in 2020, he earned "over 100 gross." He requested that the 2007 order be modified to name him as the conservator with the right to decide where J.J.G. lives and to make educational decisions. At the conclusion of the hearing, the trial court granted the request.

Subsequently, Ybarra retained counsel and filed a "Motion to Sign Order Confirming Child Support Review Order Pursuant to Section 233.0217 of the Texas Family Code and to Void the Child Custody Proceeding Held Under Section 153 of the Texas Family Code." The motion argued that the trial court's ruling at the hearing was not supported by any pleadings, and it asked the trial court to confirm the Child Support Review Order proposed by the OAG in 2020. Guthrie filed a response to the motion.

On December 3, 2021, the trial court signed a "Final Order in Suit to Modify Parent Child Relationship" providing in part that Ybarra "after notice of final trial did not appear and has defaulted" and that "the modifications requested by [Guthrie] are in the best interests of the child." The order named both parties joint managing conservators of J.J.G. but stated that Guthrie would have the exclusive right to, among other things, (1) "designate the primary residence of the child without regard to geographic area," and (2) "make decisions concerning the child's education." The order granted Ybarra standard visitation rights, stated that Guthrie's child support obligation is terminated, and directed Ybarra to pay $113 per month in medical support to compensate Guthrie for J.J.G.'s health insurance costs. This appeal followed.

## II.    DISCUSSION

### A.    Standard of Review

The trial court is afforded great discretion when determining issues relating to conservatorship, such as the right to designate the child's primary residence and the right to make decisions affecting the child's education. *See Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.); *Gardner v. Gardner*, 229 S.W.3d 747, 753–54 (Tex. App.—San Antonio 2007, no pet.); *see also Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). The trial court also has discretion to determine whether pleadings include sufficient allegations to give fair notice of a claim or requested relief. *Montes v. Filley*, 359 S.W.3d 260, 264 (Tex. App.—El Paso 2011, no pet.).

In determining whether the trial court abused its discretion, we review the "evidence in a light most favorable to the court's decision and indulge every legal presumption in favor of its judgment." *In re J.I.Z.*, 170 S.W.3d 881, 883 (Tex. App.—Corpus Christi–Edinburg 2005, no pet.). Where, as here, no findings of fact and conclusions of law are filed, it is "implied that the trial court made all the findings necessary to support its judgment." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam). "A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision." *In re R.T.K.*, 324 S.W.3d 896, 900 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

### B.    Applicable Law

A post-answer default judgment will be held erroneous if "the petition (or pleading for affirmative relief) does not give fair notice to the defendant of the claim asserted." *Paramount Pipe & Supply Co. v. Muhr*, 749 S.W.2d 491, 494 (Tex. 1988) (citing *Stoner*

*v. Thompson*, 578 S.W.2d 679, 684–85 (Tex. 1979)); *see Dolgencorp of Tex., Inc. v. Lerma*, 241 S.W.3d 584, 589 (Tex. App.—Corpus Christi–Edinburg 2007), *rev'd on other grounds*, 288 S.W.3d 922 (Tex. 2009); *see also* TEX. R. CIV. P. 47(a) (requiring a plaintiff's pleadings to give "fair notice of the claim involved"); TEX. FAM. CODE ANN. § 102.008(a)(10) (stating that a petition in a suit affecting the parent-child relationship "must include . . . a statement describing what action the court is requested to take concerning the child and the statutory grounds on which the request is made").[4] However, "[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE ANN. § 153.002. Accordingly, the Texas Supreme Court has held that "[t]echnical rules of practice and pleadings are of little importance in determining issues concerning the custody of children." *Leithold v. Plass*, 413 S.W.2d 698, 701 (Tex. 1967).

Generally, a court may modify an order affecting the parent-child relationship only if the modification is in the best interest of the child and "the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since" the date of the rendition of the order. TEX. FAM. CODE ANN. § 156.101(a)(1)(A).

## C. Analysis

Ybarra contends that the judgment was improper because Guthrie's pleadings did not explicitly request that he be granted the exclusive rights to designate J.J.G.'s residence and to make educational decisions concerning him. *See* TEX. R. CIV. P. 130

---

[4] Issues which are not pleaded but are tried by consent "shall be treated in all respects as if they had been raised in the pleadings." TEX. R. CIV. P. 67; *see Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009). But trial by consent cannot occur when a party defaults. *In re Marriage of Day*, 497 S.W.3d 87, 90 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

7

("The judgment of the court shall conform to the pleadings . . . .").

Texas employs a fair notice standard for pleadings in civil cases. *See* TEX. R. CIV. P. 47(a). Under this standard, "we consider whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant." *In re A.D.*, 474 S.W.3d 715, 730 (Tex. App.—Houston [14th Dist.] 2014, no pet.). A court should liberally construe a petition in favor of the pleader if, as here, no special exceptions are filed. *Id.* "[H]owever, we cannot use a liberal construction of the petition as a license to read into the petition a claim that it does not contain." *Flowers v. Flowers*, 407 S.W.3d 452, 458 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Here, Guthrie's petition asked the court to, among other things, confirm a "modified parenting plan that this Court finds to be in the best interest of the child." Guthrie asserts that this request put Ybarra on notice that "all matters related to rights and duties, possession[,] and access" would be at issue before the court. Ybarra disagrees and contends that, under the family code, a "parenting plan" merely "sets out rights and duties of a parent that provides for periods of possession of and access to the child," and does not concern exclusive rights to designate the child's residence or make educational decisions.

The family code defines "parenting plan" as "the provisions of a final court order that":

(A)    set out rights and duties of a parent or a person acting as a parent in relation to the child;

(B)    provide for periods of possession of and access to the child . . . ;

(C)    provide for child support; and

(D)    optimize the development of a close and continuing relationship between each parent and the child.

8

TEX. FAM. CODE ANN. § 153.601(4). With certain exceptions not applicable here, a final order in a suit affecting the parent-child relationship must include a parenting plan. *Id.* § 153.603(a). And when joint managing conservators are appointed, a court may approve a proposed parenting plan only if the plan "designates the conservator who has the exclusive right to designate the primary residence of the child" and "specifies the rights and duties of each parent regarding the child's physical care, support, and education." *Id.* § 153.133(a)(1), (2).

In arguing that his pleading gave Ybarra fair notice of his request for the exclusive rights granted to him in the final order, Guthrie relies exclusively on *Leithold* and its progeny. However, the cases applying the relaxed pleading standard described in *Leithold* largely involve original custody proceedings, not modifications of custody orders. *See, e.g.*, *In re J.H. III*, 538 S.W.3d 121, 125 (Tex. App.—El Paso 2017, no pet.); *Green v. Green*, 850 S.W.2d 809, 811 (Tex. App.—El Paso 1993, no writ); *Aguilar v. Barker*, 699 S.W.2d 915, 917 (Tex. App.—Houston [1st Dist.] 1985, no writ); *Boriack v. Boriack*, 541 S.W.2d 237, 239 (Tex. App.—Corpus Christi–Edinbug 1976, writ dism'd). In *Marriage of Christensen*, the Texarkana Court of Appeals observed that the two types of proceedings differ in a way that is significant for purposes of the fair notice analysis. 570 S.W.3d 933, 940 n.9 (Tex. App.—Texarkana 2019, no pet.). In particular, the court noted that a final order in an original custody proceeding is required by statute to, among other things, "designate the conservator who has the exclusive right to determine the primary residence of the child." *Id.* (quoting TEX. FAM. CODE ANN. § 153.134(b)(1)(A)).[5] Thus, "a

---

[5] Unlike a modification order, an original custody order must also "specify the rights and duties of each parent regarding the child's physical care, support, and education." TEX. FAM. CODE ANN. § 153.134(b)(1)(A)).

9

general request for determination of conservatorship" in an original custody proceeding "necessarily imbues the trial court with discretion to impose a geographical restriction," even if no such restriction was requested in the pleadings. *Id.* But final orders in modification proceedings are not subject to that statutory requirement. *See id.*; *Green*, 850 S.W.2d at 811; *see also Johnson v. Johnson*, No. 03-19-00196-CV, 2020 WL 4726589, at *8 n.4 (Tex. App.—Austin Aug. 13, 2020, no pet.) (mem. op.) (noting that, in a modification proceeding, "the movant must plead which specific provision he seeks to modify so as to allow the non-movant the opportunity to respond"). Accordingly, courts apply pleading requirements more strictly in modification proceedings. *See, e.g.*, *Flowers*, 407 S.W.3d at 458 (finding court erred in modifying custody order to remove geographic restriction because that was not requested in the pleadings); *In re A.B.H.*, 266 S.W.3d 596, 599–601 (Tex. App.—Fort Worth 2008, no pet.) (finding court erred in appointing father sole managing conservator where petition to modify requested only that he be named joint managing conservator with the right to determine the child's residence); *Baltzer v. Medina*, 240 S.W.3d 469, 476 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (same); *In re B.M.*, 228 S.W.3d 462, 465 (Tex. App.—Dallas 2007, no pet.) (finding court erred in ordering permanent relief where petition to modify requested only temporary relief).

Given the circumstances of this case, we cannot conclude that Guthrie's petition for modification gave Ybarra fair notice that Guthrie would be seeking the exclusive rights which were awarded to him in the final order. The case arose out of the OAG's petition, which sought only a modification of child support. Guthrie's petition did not specifically request the rights he was awarded, nor did it allege any facts which would support the

award of those rights.[6] In the context of this modification proceeding, Guthrie's generic request for a "modified parenting plan," without any detail, did not enable Ybarra to ascertain "the nature and basic issues of the controversy and what testimony will be relevant." *See In re A.D.*, 474 S.W.3d at 730. Therefore, the trial court abused its discretion by awarding Guthrie the exclusive rights to designate J.J.G.'s residence and to make educational decisions concerning him. *See* TEX. R. CIV. P. 130; *Muhr*, 749 S.W.2d at 494; *Montes*, 359 S.W.3d at 264.

### III. CONCLUSION

We sustain Ybarra's issue on appeal, reverse the trial court's judgment, and remand for proceedings consistent with this memorandum opinion.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
9th day of March, 2023.

---

[6] Ybarra's pro se response to Guthrie's petition indicates that she believed the matter was entirely about child support.

11