

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

## No. 02-18-00328-CV

_____

## W.D., Appellant

## V.

## R.D., Appellee

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 16-05722-431

Before Sudderth, C.J.; Gabriel and Birdwell, JJ.
Memorandum Opinion by Justice Gabriel

**MEMORANDUM OPINION**

In this appeal from a final divorce decree, appellant W.D. (Wendy)[1] asserts in three issues that the trial court abused its discretion by ordering her to pay child support, by conditioning her supervised visitation on her up-front payment of all fees, by denying her request for spousal maintenance, and by failing to allow her to present her full case for possession and access at trial. We conclude that the trial court did not abuse its discretion and affirm the final divorce decree.

## I.  BACKGROUND

### A.  DIVORCE PETITION AND TEMPORARY ORDERS

In 2016, appellee R.D. (Rob) filed a divorce petition, seeking the dissolution of his twelve-year marriage to Wendy. *See* Tex. Fam. Code Ann. § 6.402. They had four children, ranging in age from three to eight. Rob averred that Wendy had moved with the children and had concealed their location in July 2016, interfering with his possessory rights. Wendy filed a counterpetition, alleging that Rob had "a history or pattern of committing family violence" between 2014 and 2016 and requesting that he be denied access to the children. The trial court entered temporary orders on September 26, 2016, appointing Rob and Wendy temporary joint managing conservators of the children and ordering Rob to pay child support and spousal maintenance, to provide medical insurance for the children, and to complete a

---

[1] We use fictitious names to refer to the parties. *See* Tex. Fam. Code Ann. § 109.002(d).

2

batterers intervention program no later than May 31, 2017. *See id.* §§ 6.502, 105.001. It further ordered the parties to attend mediation no later than ten days before the final trial. *See id.* § 153.0071(c). In October 2016, the trial court again entered temporary orders with similar provisions but added a requirement that Rob and Wendy attend a "Parallel parenting/Conflict Resolution" course at Rob's expense.[2] Shortly thereafter, Wendy's attorneys withdrew from representation, and Wendy proceeded pro se.

In 2017, Rob noticed that Wendy was not feeding the children, that the children had missed several days of school since September, and that Wendy was seeking unnecessary medications for them. Further, Wendy would not surrender possession of the children to Rob on November 2, 2017, leading Rob to seek a temporary restraining order (TRO) the next day. The trial court entered a TRO that removed the children from Wendy and placed them with Rob until a hearing could be held. *See id.* §§ 6.501, 105.001.

At the November 15, 2017 hearing on Rob's application, a visiting judge heard evidence that the oldest three children had severe disciplinary and violence issues at school and had medical conditions such as ADHD and autism. Wendy also testified that eviction had been sought against her three times in the last four months, that she had not received the last two child-support payments, and that she was unemployed.

---

[2]The trial court signed nunc pro tunc temporary orders on July 6, 2017, but the operative provisions were largely unchanged.

3

Wendy reported that when the children were with Rob, they returned with injuries. This led to the Department of Family and Protective Services' (DFPS) involvement, but it concluded that there was no reason to believe Wendy's reports. Wendy filed several police reports with similar, unfounded allegations. When a therapist observed one of the older children at school, he immediately came up to the therapist and said, "[M]ommy says the Judge says I can't be with daddy. We can't be with daddy because daddy hurts us." The therapist testified that such an unprompted outcry is not "normal" for a child that age or for a child on the autism spectrum. The children told the therapist that when they were with Wendy, they were frequently hungry. The therapist concluded that the children were not safe with Wendy but would be safe with Rob. Since the children had been in Rob's sole possession, their behavior improved.

The visiting judge signed a temporary injunction on January 22, 2018 naming Rob temporary sole managing conservator and Wendy temporary possessory conservator of the children with continued DFPS monitoring. The visiting judge also (1) ordered Wendy and the children to complete a psychological evaluation, (2) terminated Rob's child-support obligation, (3) allowed Wendy weekly supervised visits with the children, (4) ordered Rob to pay for a child-custody evaluation, (5) continued the previously ordered spousal maintenance and medical support, and (6) ordered Rob and Wendy to split the cost of any unreimbursed healthcare expenses. *See id.* §§ 6.502, 105.001. At the close of the hearing, Wendy's only

questions for the court were whether she would continue to receive spousal maintenance and whether she would be paid for Rob's past missed child-support payments.

## B. BENCH TRIAL ON THE MERITS

Rob's divorce petition was set for a May 15, 2018 final trial on the merits before the court. The trial date was agreed to by both Wendy and Rob shortly after the visiting judge signed the temporary injunction—almost four months before the trial date. Wendy did not attend the court-ordered mediation in early May, cancelling at the last minute, "due to medical issues." She would not cooperate with the mediator's attempts to reschedule. At trial, Wendy continued to represent herself and she arrived late.

Rob testified that his sole managing conservatorship should be continued because Wendy "was emotionally and physically harming or neglecting the children as a means to get attention for herself or money." Rob stated that the children had to start therapy for past psychological abuse they received during Wendy's possession and for their behavioral and emotional issues, including post-traumatic stress disorder (PTSD). Wendy had also put the children on multiple, unnecessary medications and did not pay the children's medical bills even though Rob had been reimbursing her for half of those costs.

The trial court rendered final orders in a memorandum on July 26, 2018, and signed the final divorce decree on September 12. The decree (1) ordered Wendy to

pay child support based on the finding that she had $1,134.87 in net monthly resources; (2) ordered Mother to pay medical-support reimbursement; (3) ordered no spousal maintenance; (4) appointed Rob as the children's sole managing conservator; (5) appointed Wendy as the children's possessory conservator; (6) limited Wendy to supervised visitation with restricted electronic contact; and (7) ordered Wendy to pay the costs of supervised visitation subject to Rob's later reimbursement of half of the costs. The trial court found that these conservatorship determinations were in the children's best interest. *See* Tex. Fam. Code Ann. §§ 153.002, .072 No party requested findings of fact or conclusions of law. *See* Tex. R. Civ. P. 298.

### C. APPEAL AND POST-DECREE ORDERS

After Wendy appealed the final decree, Rob filed a petition to modify the parent-child relationship and a TRO application, requesting that the trial court end Wendy's possession, access, and communication with the children because their mental health and behavior had deteriorated since Wendy had been granted electronic access and supervised visitation in the final decree. *See* Tex. Fam. Code Ann. §§ 156.006, .101. On October 22, the trial court entered a TRO that prohibited Wendy from communicating with or being near the children. *See id.* §§ 105.001, 156.006.

Wendy filed an indigency statement after she filed her notice of appeal, which the court reporter contested. *See* Tex. R. Civ. P. 145. The trial court held a hearing on November 30, at which neither Rob nor his counsel appeared, and found that

6

Wendy was entitled to proceed on appeal without the payment of court costs.[3] *See* Tex. R. App. P. 20.1(b).

On December 17, 2018, and after holding a hearing on Rob's TRO application, the trial court signed a temporary injunction, denying Wendy any right to possession of or access to the children "to prevent irreparable harm" to them. *See* Tex. Fam. Code Ann. §§ 109.001, 153.072, 156.006, 156.101(a).

## II. RIGHT TO FULLY PRESENT CASE

In her appeal, Wendy relies on a comment made by the visiting judge at the November 15, 2017 hearing on Rob's first temporary-injunction application and on isolated comments by the sitting judge at the May 15, 2018 bench trial to assert that she was denied a meaningful opportunity to present her case for support and custody. For the following reasons, we disagree and overrule issue three.

### A. VISITING JUDGE

As part of her argument, Wendy points to the visiting judge's comments at the conclusion of the hearing on Rob's application for a temporary injunction before closing arguments were made:

> THE COURT: [Counsel for Rob], I do see that there was a requirement in [the temporary orders] for a BIPP program.
>
> [Counsel for Rob]: For batterers' intervention.

---

[3]Wendy is represented on appeal by pro bono counsel.

7

> THE COURT: Why was that ordered? Did [the sitting judge] order that at some point?
>
> [Counsel for Rob]: Your Honor, I have no idea. . . .
>
> THE COURT: Right, okay.
>
> [Wendy]: I can testify to that.
>
> THE COURT: I don't need anything else from you right now, ma'am. I'm gonna look at the record here and see what I can find. Okay, I'm ready to hear [closing] argument. . . .

We disagree that this comment shows the visiting judge failed to allow Wendy to fully present her case at the hearing. The visiting judge expressly stated that she would consider the entire record, including the evidence Wendy adduced during the hearing. Wendy was given a sufficient opportunity to present evidence regarding the issues presented in Rob's application, and the visiting judge's rebuff of Wendy's attempt to continue testifying after the close of evidence did not deny her the fundamental right to a reasonable opportunity to be heard. *See City of Hous. v. Hous. Lighting & Power Co.*, 530 S.W.2d 866, 869 (Tex. App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.) (recognizing trial court may "impose reasonable limitations upon a litigant's presentation of evidence in a temporary injunction hearing" as long as limits do not "deprive a party of the right to offer any evidence").

## B. SITTING TRIAL JUDGE

Wendy also points to several comments by the sitting trial judge at the final trial on the merits regarding her attempts to continue the trial and to admit evidence. She

8

divides the comments into two categories in her appellate brief: (1) "Denial of requests for additional time" and (2) "Evidentiary rulings."

## 1. Continuance Requests

First, Wendy argues that she could not meaningfully present her case for possession and access because the trial court denied her requests to continue the trial based on her health issues and based on her need to prepare her cross-examination of one of Rob's witnesses.

Wendy was not present in court when the final trial began on May 15, 2018, and the trial judge noted that she had also failed to appear for mediation as ordered. The trial judge explained that Wendy had emailed the court earlier that day, seeking a continuance of the trial:

> [W]hile they do not appear in the Court's record, [Wendy] has e-mailed this Court through the court administrator today attempting to communicate with the Court and provide documents that would purport to be excuses from a physician concerning . . . [Wendy], but they have not been filed as a motion for continuance.[4]  There's been no proper motion for continuance filed with the Court, and it's my understanding that [Rob] is opposed to continuance.
>
> Frankly, the Court is opposed to continuance because of the unreasonable length of time this case has been pending and the fact that

---

[4]Rob later introduced Wendy's email and attached doctors' notes.  In the email, Wendy asked for a continuance of trial and a "rescheduling of mediation" based on "medical needs."  Wendy later testified that she sought the continuance because she had "a significant kidney infection and bladder infection."  Wendy's doctors' notes about these conditions could not be confirmed or denied because there were several irregularities in the notes, which Rob averred indicated that the notes had been tampered with.

this trial setting was agreed to by the parties. There being no authenticated and properly filed motion for continuance alleging any basis for [Wendy's] nonappearance, we will proceed with the trial.

Wendy arrived late during Rob's testimony regarding the best interest of the children and Wendy's past failure to pay medical bills as ordered. Wendy cross-examined Rob, the headmaster at three of the children's school, and the children's therapist. She also testified in response to questions from Rob's counsel. When Rob's counsel called the therapist as a witness, Wendy requested a one-day continuance of the trial:

> [Wendy]: Your Honor, may I request a recess until tomorrow - -
>
> THE COURT: No, ma'am.
>
> [Wendy]: - - in order to - -
>
> THE COURT: Well, you can request.
>
> [Wendy]: - - in order to - - I have more evidence and documentation at home that I was unable to bring today with regards to this witness.
>
> THE COURT: Your request is denied. This case has been pending for an inordinate amount of time.[5] You agreed to this setting back in January [2018]. You knew this case was set for final trial and had every opportunity to bring witnesses or evidence or otherwise be prepared for the trial today. And there is no good cause to prolong this any further.

---

[5]The final trial was held approximately two years after Rob filed his divorce petition.

We examine the denial of Wendy's continuance requests for an abuse of discretion. *See Antolik v. Antolik*, No. 06-18-00096-CV, 2019 WL 2119646, at *6 (Tex. App.—Texarkana May 15, 2019, no pet. h.) (mem. op.). The discretion vested in the trial court over the conduct of a trial is great. *Dow Chem. v. Francis*, 46 S.W.3d 237, 240–41 (Tex. 2001) (per curiam); *Schroeder v. Barndon*, 172 S.W.2d 488, 491 (Tex. 1943). This includes a trial judge's decision to deny a trial continuance. *See, e.g., Looney v. Traders & Gen. Ins. Co.*, 231 S.W.2d 735, 740 (Tex. App.—Fort Worth 1950, writ ref'd n.r.e.) (holding trial court's refusal to postpone trial to following morning to permit party to procure witness was not abuse of discretion). In the absence of a verified, written continuance motion, we presume that no abuse occurred. *See Antolik*, 2019 WL 2119646, at *6; *see also* Tex. R. Civ. P. 251 (requiring continuance motion to show sufficient cause and to be verified).

Here, Wendy agreed to the May 2018 trial date and had represented herself for 18 months before the start of trial. She waited until the morning of trial to request a continuance by email and orally requested another continuance during trial to prepare to examine one of Rob's witnesses without any showing of her prior due-diligence attempts to prepare. *See* Tex. R. Civ. P. 252. Under these facts, we cannot conclude that the trial judge abused his broad discretion by denying Wendy's unverified continuance requests. *See Dow Chem.*, 46 S.W.3d at 241.

11

## 2. Evidentiary Rulings

In relying on "[e]videntiary rulings" to support her argument, Wendy directs our attention to three instances when the sitting trial judge refused to admit her proffered evidence or to allow questioning without explaining the reasons behind these rulings.

First, Wendy cites to her cross-examination of Rob regarding a $10,000 loan, leading to the following exchange:

> [Wendy]. So you're telling me that as of today, that you have paid off the $10,000 that was . . . owed in your name to Granite State Management?
>
> A. No.
>
> Q. So how do you not have a loan if you haven't paid it off?
>
> A. They're not the loan holders anymore.
>
> Q. Yes. That's why I'm asking.
>
> Are you aware that your loan has not been paid and transferred to ECMC?
>
> A. I am currently making $1,000 payments per month - -
>
> Q. Can you furnish evidence for that?
>
> THE COURT: Ma'am, if you insist upon interrupting him without making an objection, I'm just going to cut you off and you won't get to ask any more questions.
>
> [Wendy]: Thank you, Your Honor.
>
> THE COURT: Okay?

12

This is going to go down one way and it's my way.

[Rob]: Yes, Your Honor.

THE COURT: It's the way the law envisions. That is, you ask questions, you don't interrupt her question, you wait till she's finished with the question, then you give an answer. If you think that he's not being responsive or you have some other objection to his answer, you will make an objection. You will not interrupt him otherwise.

[Wendy]: Yes, Your Honor.

THE COURT: This isn't an argument between the two of you.

[Wendy]: Yes, Your Honor.

THE COURT: Please ask your next question.

Q. (BY [Wendy]) Do you have - - can you show evidence that you are paying that loan?

[Rob's counsel]: Objection, Your Honor, to relevance. If she wanted to have a discovery document[], she needed to provide - -

THE COURT: Sustained.

Whether or not the loan's being paid simply doesn't mean anything to me in the context of dividing - -

[Wendy]: It goes to the context - - sorry, Your Honor.

THE COURT: Do not interrupt me.

[Wendy]: Sorry, Your Honor.

THE COURT: It is not relevant.

Ask your next question.

I'm neither going to explain to you my rulings nor am I going to try to justify them to you.

13

Second, Wendy takes issue with the trial court's statements during her cross-examination of Rob in which the court attempted to explain that the facts at issue at the trial were "hearing your divorce, the division of community property":

Q. What insurance company [sent you an explanation of benefits for Wendy's recent doctor visit]?

A. Aetna.

. . . .

Q. Did you notify myself through the OurFamilyWizard as you were supposed to of that change of job or insurance?

A. No.

Q. Did I request - -

THE COURT: Let me be real clear. This is not an enforcement hearing. I haven't been asked to calculate or award any arrearages of child support or spousal support. I really couldn't care less.

. . . .

. . . This just seems like pointless bickering to me.

[Wendy]: This - -

THE COURT: Listen to me. That - - that's part of the problem. When the judge talks, everybody should be listening because what the judge says is absolutely important, whether you agree or not, it is. Because I'm the one that gets to decide this case.

You understand?

So when I'm talking, you shouldn't be trying to search for your next words. That means you're not listening. If I say that it's not relevant, if I say that it's not important, it doesn't matter if you agree or

14

understand; that's what it is.  Okay?  Bickering over spousal support, I really couldn't care less.  That has . . . nothing to do with what I will be deciding today.  Zero.  I will not be dealing with the issue of spousal support today.  Okay?

Third, Wendy relies on the trial court's refusal to allow her to explain one of her children's medical conditions during her cross-examination of the children's therapist:

> Q. Were you aware that [my child] has a medical condition called "adrenarche"?

> A.  No.  And if he had a medical condition called that, that should have been disclosed in . . . his paperwork at school that I receive a copy of every time a student is assigned to my caseload.  And that is not in any documentation that I've read.

> Q.  Were you aware that that information had been e-mailed to the staff?

> A.  No.

> Q.  Okay.  Do you know what adrenarche is?

> A.  No, I do not.

> [Wendy]:  May I - - may I explain what it is, Your Honor?

> THE COURT: Ma'am, it's not my job to tell you what to do or how to do it.

> Q.  (BY [Wendy]) Adrenarche is a condition in which you hit - -

> [Rob's counsel]: Objection, Your Honor.  She's testifying.

> THE COURT: Sustained.

15

Fourth, Wendy points to the judge's exclusion of part of the headmaster's testimony as "speculative" without explaining to Wendy what "formality remained" to be satisfied for admission.

Pro se litigants—even in cases involving child-custody issues—are held to the same standards as licensed attorneys and must, therefore, comply with all evidentiary and procedural rules. *See Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978); *In re N.E.B.*, 251 S.W.3d 211, 211–12 (Tex. App.—Dallas 2008, no pet.); *see also Thrasher v. City of Amarillo*, 709 F.3d 509, 512 (5th Cir. 2013). Otherwise, pro se litigants would be given an unfair advantage over those who are represented by counsel. *See Mansfield State Bank*, 573 S.W.2d at 185.

But Wendy argues that by failing to explain his evidentiary rulings or to inform her how to proffer the evidence in an admissible form, the trial judge denied her the right to fully present her case. In support, Wendy cites to a case in which the supreme court held that "any litigant is entitled to relief from an erroneous decision of a court even though, as in this case, an experienced attorney might have been able to discern the actual [yet unstated] reason" given by the appellate court in dismissing a pro se appellant's appeal. *Peña v. McDowell*, 201 S.W.3d 665, 666–67 (Tex. 2006) (per curiam) (relying on appellate rule 37.1 and its requirement that appellate clerk notify of specific defect in notice of appeal to allow appellant to correct error). *Peña* does not stand for the proposition that a trial court's final judgment must be reversed because the trial judge failed to explain the bases for his evidentiary rulings and failed

16

thereafter to instruct the pro se litigant how to navigate the evidentiary rules. To so hold would impermissibly transform a trial judge from a neutral arbiter into an advocate for the pro se litigant. *See Brown v. State*, 122 S.W.3d 794, 797 (Tex. Crim. App. 2003) ("In the Texas adversarial system, the judge is a neutral arbiter between the advocates; he is the instructor in the law to the jury, but he is not involved in the fray."); *cf.* Tex. R. Evid. 605 (providing it is fundamental error for judge to "testify as a witness at the trial"). In fact, "the trial judge is under no duty to provide personal instruction on courtroom procedure or to perform any legal 'chores' for the defendant that counsel would normally carry out." *Martinez v. Ct. of Appeal of Cal., Fourth Appellate Dist.*, 528 U.S. 152, 162 (2000). The trial judge, ably recognizing this principle, specifically informed Wendy that he could not advise her: "I can't tell you what to do or help you or tell you how to do anything. That's not my role. The law says I'm to sit here and be neutral and not help somebody to the other party's detriment."[6] The trial court's evidentiary rulings, even though not fully explained, did not deprive Wendy of the right to present her case.

## III. CHILD SUPPORT

In part of her first issue, Wendy argues that (1) the trial court's calculation of her monthly net income for child-support purposes was erroneously based on the trial

---

[6]We also note that after Rob rested his case, the trial judge carefully instructed Wendy on her possible next steps in presenting her case, including what was and was not relevant to the facts at issue, and gave Wendy a ten-minute break so she could "gather [her] thoughts."

court's unsupported finding that she had $1,134.87 in monthly net resources and (2) the trial court abused its discretion by failing to depart from the child-support guidelines based on three of the seventeen statutory factors that would justify such a departure. *See* Tex. Fam. Code Ann. § 154.123(b)(2), (13), (16).

At trial, Wendy testified that she had ten years' experience as an educator, including as a teacher's assistant and as a nanny. Her most recent employment was as a "virtual assistant," which she did from home; but she lost that job because she "had to deal with moving . . . in the last . . . two months" and because she was "dealing with PTSD," "fibromyalgia," and "some sort of bleeding disorder" that caused her to "significantly bruise and bleed." She also affirmed that she had the ability to be employed but that she was not employed at the time of trial. She blamed her lack of employment on a "change in medical situation," her failure to receive "spousal support," and the loss of her home and car. However, Wendy recognized that even during the time she was receiving monthly spousal maintenance and child support, she was unable to pay her rent or her car payments and did not pay the children's medical bills even though Rob had reimbursed her for the amounts she told him she had paid. At the time of trial, Wendy was living with "several different friends." In the final divorce decree, the trial court ordered Wendy to pay Rob $353.68 each month in child support based on the court's finding that Wendy's net resources per month were $1,134.87 and that the percentage applied to the first $8,550 was 35%. *See* Tex. Fam. Code Ann. §§ 154.125, .130(b).

18

A trial court's child-support determinations fall within its broad discretion. *See Worford v. Stamper*, 801 S.W.2d 109, 109 (Tex. 1990) (per curiam); *Moreno v. Perez*, 363 S.W.3d 725, 735 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Klise v. Klise*, 678 S.W.2d 545, 546 (Tex. App.—Houston [14th Dist.] 1984, no writ). If there is some probative and substantive evidence supporting a child-support finding, then there is no abuse of discretion. *See Tucker v. Tucker*, 908 S.W.2d 530, 532 (Tex. App.—San Antonio 1995, writ denied). A child-support amount that conforms to the child-support guidelines is presumed to be reasonable and in the best interest of the children. Tex. Fam. Code Ann. § 154.122(a). And if the trial court determines that "the actual income of the obligor is significantly less than what the obligor could earn because of intentional unemployment or underemployment, the court may apply the support guidelines to the earning potential of the obligor." *Id.* § 154.066(a).

A trial court may deviate from the guidelines if it determines they are unjust or inappropriate under the circumstances. *Id.* §§ 154.122(b), .123(a). If a deviation is warranted, the trial court must consider seventeen "relevant factors," including the three challenged by Wendy: (1) "the ability of the parents to contribute to the [children's] support," (2) "special or extraordinary educational, health care, or other expenses of the parties or of the child[ren]," and (3) "debts or debt service assumed by either party." *Id.* § 154.123(b). In cases where there is no specific evidence of a party's resources, "the court **shall** presume that the party has income equal to the

19

federal minimum wage for a 40-hour week to which the support guidelines may be applied." *Id.* § 154.068(a) (emphasis added).

Here, Wendy's only evidence of her monthly net resources at the final trial on the merits were her averments that she had none based mainly on the fact that she was no longer receiving spousal maintenance or child support. *Cf. In re J.R.K.*, No. 06-10-00121-CV, 2011 WL 3242264, at *2 (Tex. App.—Texarkana July 8, 2011, no pet.) (mem. op.) (reasoning that "evidence from the hearing on temporary orders could neither be considered by the trial court in reaching its final orders, nor by this Court on reviewing the final order" because evidence from temporary hearing not introduced or admitted as evidence at the final hearing); *see also In re A.T.*, No. 05-16-00539-CV, 2017 WL 2351084, at *13 (Tex. App.—Dallas May 31, 2017, no pet.) (mem. op.) (same). Wendy also relied on her medical conditions but agreed that she was able to work, which was borne out by her recent employment history. The lack of specific evidence of Wendy's net resources required the trial court to presume that she had a salary equal to the federal minimum wage. *See* Tex. Fam. Code Ann. § 154.068(a); *cf. Coburn v. Moreland*, 433 S.W.3d 809, 832–33 (Tex. App.—Austin 2014, no pet.) (recognizing trial court not required to make specific finding of voluntary underemployment). The trial court had the discretion to rely on this presumption and to conclude based on the evidence that the guidelines were not unjust or inappropriate under the circumstances. *See* Tex. Fam. Code Ann. §§ 154.068, .122, .125(b); *Attaguile v. Attaguile*, No. 08-16-00222-CV, 2018 WL 4659580, at *14–15 (Tex.

20

App.—El Paso Sept. 28, 2018, no pet.). We presume that the ordered, guideline-compliant child support was reasonable and in the children's best interest, and Wendy has not met her burden to establish otherwise. *See* Tex. Fam. Code Ann. § 154.122; *Attaguile*, 2018 WL 4659580, at \*11–12, \*15. Accordingly, we cannot conclude in this case that the trial court abused its discretion by failing to deviate from the child-support guidelines. *See* Tex. Fam. Code Ann. § 154.122; *Attaguile*, 2018 WL 4659580, at \*11–12, \*15; *In re G.L.S.*, No. 12-06-00315-CV, 2007 WL 3087685, at \*7 (Tex. App.—Tyler Oct. 24, 2007, no pet.) (mem. op.); *In re Hidalgo*, 938 S.W.2d 492, 498 (Tex. App.—Texarkana 1996, no writ). We overrule this portion of issue one.

## IV. SPOUSAL MAINTENANCE

In her second issue, Wendy argues that the trial court abused its discretion by failing to award her postdivorce spousal maintenance. Postdivorce spousal maintenance would have been appropriate only if Wendy lacked sufficient property, including her separate property, to provide for her reasonable needs and if she (1) could not earn sufficient income based on "an incapacitating physical or mental disability," (2) was married to Rob for ten years or longer[7] and lacked the ability to earn sufficient income for her minimum reasonable needs, or (3) is the custodian of a child "who requires substantial care and personal supervision because of a physical or mental disability that prevents [Wendy] from earning sufficient income to provide for

---

[7]It is undisputed that Rob and Wendy were married for more than ten years.

21

[her] minimum reasonable needs." Tex. Fam. Code Ann. § 8.051. We review a trial court's denial of spousal maintenance for an abuse of discretion, asking whether the trial court had sufficient information on which to exercise its discretion and whether the trial court erred in its application of that discretion. *Fuentes v. Zaragoza*, 555 S.W.3d 141, 171 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

Wendy relies on her "physical disability" and the trial court's finding in the divorce decree that the "credible evidence suggests that she suffers from undiagnosed and untreated mental illness, personality disorder, or both" to argue that she is unable to provide for her minimum physical needs and, therefore, is eligible for spousal maintenance. *See* Tex. Fam. Code Ann. § 8.051(2)(A)–(B). There is a rebuttable presumption that postdivorce maintenance is not warranted unless Wendy exercised diligence in earning sufficient income or in developing necessary skills to provide for her minimum reasonable needs. *See id.* § 8.053. To rebut this presumption, Wendy was required to prove by a preponderance of the evidence that her incapacitating physical disability continues and prevents her from supporting herself through employment or that she lacked the ability to earn sufficient income. *See Hackenjos v. Hackenjos*, 204 S.W.3d 906, 909 (Tex. App.—Dallas 2006, no pet.). This she did not do.

Wendy testified that she lost her most recent job because she had to move and because she was dealing with several medical conditions. There was no evidence that these medical conditions were incapacitating or kept her from finding other

22

employment to satisfy her reasonable minimum needs. Indeed, Wendy testified that she was able to work at the time of trial. We conclude that even though the trial court found that Wendy suffers from an undiagnosed mental illness or disorder,[8] she failed to meet her burden to prove that her medical and mental conditions were incapacitating or prevented her from providing for her reasonable minimum needs. Accordingly, the trial court did not abuse its discretion by failing to order Rob to pay spousal maintenance to Wendy under section 8.051(2)(A)–(B). *See, e.g.*, *In re Marriage of McCoy*, 567 S.W.3d 426, 429–30 (Tex. App.—Texarkana 2018, no pet.); *Chafino v. Chafino*, 228 S.W.3d 467, 474–75 (Tex. App.—El Paso 2007, no pet.).

Wendy also argues that because "more than one" of her and Rob's children require substantial care and personal supervision because of their physical or mental disabilities, she was eligible for spousal maintenance. *See* Tex. Fam. Code Ann. § 8.051(2)(C). But this ground for spousal-maintenance eligibility requires that Wendy be the "custodian" of the children that have disabilities requiring substantial care. *Id.* At the final trial on the merits, Wendy was not a custodian of any of the children; thus, she could not have established her eligibility based on this ground. We overrule issue two.

---

[8]Wendy does not attack the sufficiency of the evidence to support the trial court's mental-health finding.

23

## V. CONDITIONAL VISITATION

Wendy contends that her indigency statement, which she filed after the final divorce decree and after her notice of appeal, shows her limited financial resources and supports her argument that the trial court's conditioning of her supervised visitation on her up-front payment of all supervision fees, subject to Rob's 50% reimbursement, was an abuse of discretion. She specifically argues that her inability to pay for the supervised visits allows Rob to "unilaterally" deny Wendy visitation by "withholding agreement to a person who would adequately supervise without charge." Wendy therefore asks this court to modify the supervision requirement "so that if [Rob] does not provide a reasonable basis for withholding agreement to a supervisor [Wendy] propose[s], [Rob] . . . must pay the full cost of supervision." She does not challenge the evidentiary support for the trial court's deviation from a standard possession order, allowing Wendy supervised, in-person visitation and electronic communication. *See generally id.* § 153.004(e) (dictating rebuttable presumption that child's best interest not served by unsupervised visitation if credible evidence shows parent had pattern of child neglect), § 153.252 (providing for rebuttable presumption that standard possession order provides reasonable minimum possession of a child and is in the child's best interest), § 153.256 (giving factors for court to consider if ordered possession deviates from standard possession order).

We review child-custody determinations, including a departure from a standard custody order, for an abuse of discretion. *See In re N.P.M.*, 509 S.W.3d 560, 563–64

24

(Tex. App.—El Paso 2016, no pet.); *In re A.D.*, 474 S.W.3d 715, 731 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *O'Connor v. O'Connor*, 245 S.W.3d 511, 518 (Tex. App.—Houston [1st Dist.] 2007, no pet.). As long as there is some evidence of a substantive and probative character to support the trial court's decision, no abuse of discretion may be found. *See Mauldin v. Clements*, 428 S.W.3d 247, 268 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

In the trial court, Wendy repeatedly failed to appear for hearings and arrived late for the first day of trial. She also did not appear for court-ordered mediation and would not cooperate with the mediator's attempts to reschedule. Before the final divorce decree was signed, Wendy received child-support and spousal-maintenance payments, but she was unable or unwilling to provide for the children's medical and physical needs. The trial court heard evidence that Wendy was not paying the children's medical bills even though she was receiving reimbursement payments from Rob. Wendy admitted that she was able to work at the time of trial. Wendy made false family-violence accusations against Rob and attempted to abscond with the children before the final decree was signed. *See* Tex. Fam. Code Ann. § 153.013. The children's therapist testified that the children's behavior drastically improved after being placed in Rob's sole managing conservatorship and that they were not safe with Wendy.

We conclude that this evidence supports the trial court's discretionary determination to require Wendy to pay the up-front cost of a supervisor, subject to

25

Rob's 50% reimbursement, based on the children's best interest. *See id.* §§ 153.002, .193, .256; *see, e.g.*, *N.P.M.*, 509 S.W.3d at 564–65; *A.D.*, 474 S.W.3d at 731; *In re A.R.*, 236 S.W.3d 460, 469–73 (Tex. App.—Dallas 2007, no pet.) (op. on reh'g); *O'Connor*, 245 S.W.3d at 518; *cf.* Tex. Fam. Code Ann. § 154.011 (disallowing order conditioning possessory conservator's possession and access on payment of child support). And we cannot conclude that the trial court abused its discretion and render the possession order Wendy seeks based on a statement of indigency that she submitted to the trial court after the divorce decree was signed or based on Rob's hypothetical, future refusal to agree to Wendy's chosen supervisor. *See generally Khan v. Valliani*, 439 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("When deciding whether the trial court abused its discretion . . . we consider only the record at the time of the trial court's ruling. . . ."); *Finn v. Finn*, 658 S.W.2d 735, 748 (Tex. App.—Dallas 1983, writ ref'd n.r.e.) (en banc) (noting post-ruling evidence "does not control the question of abuse of discretion" at the time of the ruling). We overrule the remaining portion of issue one.

## VI. CONCLUSION

Having concluded that the trial court did not abuse its discretion on any of the bases Wendy raises on appeal, we affirm the trial court's final divorce decree. *See* Tex. R. App. 43.2(a).

/s/ Lee Gabriel

Lee Gabriel
Justice

Delivered:  June 27, 2019